UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ALLAN GORDON, ) | |
| ) | |
| Plaintiff, ) | 3:07-CV-00085-LRH-RAM |
| ) | |
| v. ) | |
| ) | ORDER |
| RONALD DALRYMPLE, an individual, ) | |
| ) | |
| Defendant. ) | |

Before the court is Defendant Dr. Ronald Dalrymple's ("Dalrymple") motion for summary judgment (#13[1]). Plaintiff Dr. Allan Gordon ("Gordon") has responded (#14), and Dalrymple has replied (#15).

**I.    Factual and Procedural History**

Dalrymple and Gordon worked together at the Laughlin Mental Health Clinic, a clinic within the State of Nevada's agency of Rural Clinics. (Mot. for Summ. J. (#13) at 2.) Gordon was hired in October 2006 to direct the Laughlin clinic, and about two weeks later Dalrymple was hired as a staff psychologist under Gordon. (*Id.*) Prior to working at the Laughlin clinic, Gordon and Dalrymple had held the same position at a facility in Florida, though some years apart. (Dalrymple Dep. (#13), Attach. 2 at 10:11-15.) The two first met on October 16, 2006, the day Dalrymple was

---
[1] Refers to court's docket number

hired. (*Id*. at 10:16-18.)

Beginning that day, Dalrymple began to keep track of his interactions with Gordon. (Dalrymple Letter (#14), Ex. 1 at 1.) On November 20, 3006, Dalrymple spoke on the phone to SueAnn Bawden, Deputy Director of Rural Clinics, about Gordon's "disparaging remarks about Christians." (Bawden Dep. (#13), Attach. 2 at 5.) Bawden informed Dalrymple such remarks "ha[ve] to be reported" because they can constitute a hostile work environment. (*Id*.) Since Bawden was on vacation at the time, she gave Dalrymple the private fax number of Ray Kendall, the Director of Rural Clinics. (*Id*. at 6:1-5.) Dalrymple submitted his letter of complaint ("letter") almost immediately after he spoke to Bawden (*Id*. at 6-7).

Dalrymple's letter begins with a dated catalogue of incidents Dalrymple found offensive. For example, Dalrymple writes that on October 24, 2006, "Gordon insulted me in front of the entire staff." (Dalrymple Letter (#14), Ex. 1 at 1.) Dalrymple also records Gordon as "slandering" Christians. (*Id*.) Following this catalogue, Dalrymple writes that Gordon displays narcissistic personality disorder, "sociopathic traits," and "passive-aggressive traits." (*Id*.) Dalrymple also writes that "Gordon is a spoiled rich kid from NYC, raised by an arms-dealing father who profitted [sic] from the deaths of millions in World War II." (*Id*.)

Dalrymple's letter initiated an investigation during which Gordon was temporarily reassigned. (*Id*. at 7:1-6.) The investigation found Dalrymple's claims could not be substantiated. (Dep't of Personnel Memo. (#13), Attach. 3 at 2-5.) Throughout the investigation, the only people who saw Dalrymple's letter were Kendall, Casey Gillham, Personnel Officer for Rural Clinics, Debbie Hosselkuss, Deputy Administrator of the Division of Mental Health and Developmental Services, and an investigator for the Department of Personnel. (Kendall Dep. (#13), Attach. 3 at 5, 14-15, 25; Hosselkuss Dep. (#13), Attach. 4 at 4.) The letter was not included in Gordon's personnel file. (Kendall Dep. (#13), Attach. 3 at 26:11-14.)

Following the investigation, Gordon returned from his temporary reassignment. However,

2

four women (two from Laughlin, two from Gordon's temporary location) filed sexual harassment complaints against Gordon in December 2006. (*Id*. at 7:10-11.) These complaints led Kendall to terminate Gordon, a probationary employee owing to his recent hire, on January 16, 2007. (Bawden Dep. (#13), Attach. 2 at 12-16.) Dalrymple left the Laughlin Clinic on January 26, 2007, moving to Florida for personal reasons. (Dalrymple Dep. (#13), Attach. 2 at 3:22-25.)

Gordon filed this action on February 20, 2007, alleging defamation and First Amendment retaliation under 42 U.S.C. § 1983.

**II. Legal Standard**

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©.  In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). *See also Idema v. Dreamworks, Inc.*, 162 F.Supp.2d 1129, 1141 (C.D. Cal. 2001).  For those issues where the moving party will not have the burden of proof at trial, the movant must point out to the court "that there is an absence of evidence to support the nonmoving party's case." *Catrett,* 477 U.S. at 325.

In order to successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson School Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to establish a genuine dispute; there must be evidence on which the jury could reasonably find for the plaintiff. *See id.* at 252.

**III. Discussion**

**A. Procedural Issues**

The court addresses issues of subject matter jurisdiction *sua sponte*. *Fleck & Assoc., Inc. v. City of Phoenix*, 471 F.3d 1100, 1107 n.4 (9th Cir. 2006). "Absent unusual circumstances, a party seeking to invoke diversity jurisdiction should be able to allege affirmatively the actual citizenship of the relevant parties." *Kanter v. Warner-Lambert Co.*, 265 F. 3d 853, 858 (9th Cir. 2001). Here, though Gordon invokes diversity jurisdiction, Gordon's complaint fails to affirmatively allege the citizenship of each party to the action. (Compl. at ¶ 1). Therefore, there is no subject matter jurisdiction based on diversity.

However, "any non-frivolous assertion of a federal claim suffices to establish federal question jurisdiction . . . ." *Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 955 (9th Cir. 2004). Gordon states a nonfrivolous federal claim (Compl. at ¶ 16); therefore, the court retains federal question jurisdiction under 28 U.S.C. § 1331.

**B. Defamation**

Under Nevada law, in order to establish a prima facie case of defamation, a plaintiff must prove "(1) a false and defamatory statement by defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages." *Chowdhry v. NLVH*, 851 P.2d 459, 462 (Nev. 1993). A defamatory statement lowers the defamed person in the estimation of the community, excites derogatory opinions about the person, or holds the person up to contempt. *Lubin v. Kunin*, 7 P.3d 422, 425 (Nev. 2001) (*quoting K-Mart Corp. v. Washington*, 866 P.2d 274, 281-82 (Nev. 1993)). Dalrymple argues he is entitled to summary judgment on Gordon's defamation claim for three reasons, two of which are affirmative defenses and one of which goes to the prima facie case. The affirmative defenses are the common interest privilege and the intracorporate communications privilege. With regard to the prima facie case, Dalrymple argues his statements asserted opinions, not facts, and are thus not defamatory.

**1. Prima Facie Case**

"There can be no liability for defamation without proof of falsity," and the plaintiff bears the burden of proof regarding the statement's falsity. *Nevada Ind. Broad. Corp. v. Allen*, 664 P.2d 337, 412 (Nev. 1983). Here, Gordon denies he made anti-Christian remarks and denies his father profited from deaths in World War II. (Gordon Dep. (#14) at 1:19-28.) In addition, Gordon claims he treated Dalrymple with "respect and professionalism" at all times. (*Id.*) These averments are sufficient to establish falsity for the purposes of a prima facie case.

Gordon must also show actual or presumed damages. It is unclear whether Nevada law requires special damages in stating a claim of libel. While one early case notes the necessity of establishing special damages unless the claim is libelous per se, *Talbot v. Mack*, 169 P. 25, 34 (Nev. 1917), the Restatement, which Nevada follows for defamation, does not require special damages in the case of libel, Restatement (Second) of Torts § 568 cmt. b (1971). However, since

1  the defamatory statements "imput[e] [Gordon's] lack of fitness for trade, business, or profession,"
2  the statements constitute libel per se. *K-Mart Corp.*, 866 P.2d at 282 (discussing slander per se).
3  For instance, Dalrymple alleges Gordon violated "professional relationships under [American
4  Psychological Association] code" and Gordon, a psychologist working in a mental health clinic,
5  was "sociopathic." (Dalrymple Letter (#14), Ex. 1 at 2.) Since these statements clearly impute a
6  lack of fitness for Gordon's position as director of the Laughlin clinic, special damages are
7  presumed, *K-Mart Corp.*, 866 P.2d at 282, and the court need not determine Nevada's stance on
8  the issue.

### i.  Opinion vs. Fact

10  Whether a statement is defamatory is generally a question of law. *Lubin*, 17 P.3d at 422.
11  However, a statement may only be defamatory if it "contains a factual assertion." *Flowers v.*
12  *Carville*, 112 F. Supp. 2d 1202, 1210 (D. Nev. 2000) *rev'd in part on other grounds by Flowers v.*
13  *Carville*, 310 F.3d 1118 (9th Cir. 2002). Statements of opinion cannot be defamatory because
14  "there is no such thing as a false idea." *Pegasus v. Reno Newspapers, Inc.*, 57 P.3d 82, 87 (Nev.
15  2003) (internal quotation marks omitted). In Nevada, in order to determine if a statement is one of
16  fact or opinion, "the court must ask whether a reasonable person would be likely to understand the
17  remark as an expression of the source's opinion or as a statement of existing fact." *Id*. at 88
18  (internal quotation marks omitted). In addition, in determining if a statement is one of fact or
19  opinion, three factors are relevant: "(1) whether the general tenor of the entire work negates the
20  impression that defendant was asserting an objective fact; (2) whether the defendant used figurative
21  or hyperbolic language that negates that impression; and (3) whether the statement in question is
22  susceptible of being proved true or false." *Flowers*, 112 F. Supp. 2d at 1211. Nevada law
23  considers the statement in context, including medium and audience. *Riggs v. Clark County Sch.*
24  *Dist.*, 19 F. Supp. 2d 1177, 1181 (D. Nev. 1998).
25  The "reasonable person" test and the three-factor test for whether a statement contains
26

factual assertions may be simplified by a test based on presuppositions.[2]  A *presupposition* is a proposition whose truth must be assumed for a statement to be appropriate in context.  *See generally* David Beaver, *Presupposition, in The Handbook of Logic and Language*, 939 (J. van Benthem & A. ter Meulen eds., Elsevier 1997).  For instance, in order for the statement *John stopped smoking* to make sense, the interpreter must presuppose the fact that John smoked at some previous time.   The advantage of the presupposition test is its precision and simplicity: any statement which presupposes defamatory facts unknown to the interpreter is defamatory.

In addition, a test based on whether a statement is "susceptible of being proved true or false" fails to catch clearly defamatory remarks.  For instance, the statement *John may or may not regret killing his wife* is not susceptible to proof of truth–it is a tautology–but the statement presupposes that John killed his wife.  Therefore, the statement is defamatory as one containing factual assertions even though it fails the "proof" test and similar tests based on "objective" or "empirical" verification.  *See, e.g.*, *Geraci v. Eckankar*, 526 N.W.2d 391, 397 (Minn. Ct. App. 1995).

Dalrymple's letter is rife with factual assertions.  First, Dalrymple, a psychologist, diagnoses Gordon with narcissistic personality disorder, "sociopathic traits," and "passive-aggressive traits."  (Dalrymple Letter (#14), Ex. 1 at 1.)  Later, during the course of the investigation, Dalrymple claims to stick by his diagnoses despite never formally examining Gordon.  (Kendall Memo. (#13), Attach. 3A.)  Dalrymple's position as a psychologist gives his statements more weight, raising them from opinion to fact, especially since they imply a formal evaluation of Gordon and thus access to facts unknown by the letter's audience.  *See Riggs*, 19 F. Supp. 2d at 1182.  Second, Dalrymple states that Gordon was "raised by an arms-dealing father who profited from the deaths of millions in World War II," that Gordon slandered Christians, and

---

[2]This type of test is in line with the Restatement, which divides opinions into "pure" and "mixed." Restatement (Second) of Torts § 566 cmt. b 1971. Pure opinion creates no liability, but mixed opinion can create liability depending on the implied, undisclosed factual assertions. *Id*.

7

that Gordon said Dalrymple "didn't know anything."  (Dalrymple Letter (#14), Ex. 1 at 1-3.)
These statements clearly denote past events, not opinions.  Third, statements such as "[Gordon] never apologized for his insulting, obnoxious behavior" presuppose Gordon's insulting behavior, a factual proposition.

Further, the letter's medium and audience suggest that the letter would be interpreted as asserting factual propositions.  The medium, a complaint through Nevada's Department of Personnel, entails an investigation and report.  An investigation implies verification of factual matters.  Dalrymple's contention he was simply "rant[ing]" against Gordon is belied by his implied request for Department of Personnel action: "He is in violation of state policy by creating an abusive and hostile work environment.  I need to consult with your human resources personnel about my rights and welfare in this situation."  (Dalrymple Letter (#14), Ex. 1 at 3.)  Additionally, the letter's audience, personnel in Rural Clinics, is likely to give psychological evaluations significant deference since these personnel work in the field of mental health.  Therefore, Dalrymple's audience likely interpreted his statements as factual assertions instead of opinion.  Though the tenor of the letter is angry, and though the letter does display instances of hyperbole (for instance, Dalrymple calls Gordon a "duplicitous primate," a "monster," a "sick bastard"), the letter's factual assertions dominate the letter's content.

**2.     Common-Interest Privilege**

The common-interest privilege does apply to Dalrymple's letter, but factual issues surrounding Dalrymple's actual malice prevent summary judgment.  "A qualified or conditional privilege exists where a defamatory statement is made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a right of duty, if it is made to a person with a corresponding right or duty."  *Circus Circus v. Witherspoon*, 657 P.2d 101, 105 (Nev. 1983).  Since qualified privileges are affirmative defenses, the defendant bears the burden of pleading and proving the privilege applies.  *Pope v. Motel 6*, 114 P.3d 277, 284 (Nev.

2005). A conditional privilege is a question of law, and after a defendant establishes such a privilege, the plaintiff may show that the defendant abused the privilege by acting with actual malice. *Circus Circus*, 657 P.2d at 105. "Actual malice is a stringent standard that is proven by demonstrating that a statement is published with knowledge that it was false or with reckless disregard for its veracity." *Pegasus*, 57 P.3d at 92. Evidence of negligence, motive, and intent may cumulatively establish recklessness. *Allen*, 664 P.2d at 344.

In this case, Dalrymple had a duty to report incidents that might constitute a hostile work environment, and Bawden told Dalrymple that anti-Christian remarks would constitute a hostile work environment. (Bawden Dep. (#13), Attach. 2 at 5:18-25.) In addition, the letter's recipients had a duty to investigate and prohibit harassment and discrimination in the workplace. (*See* Governor's Policy Against Sexual Harassment & Discrim. (#13), Attach. 5 at ¶¶ 3, 6.[3]) Therefore, the privilege provisionally applies.

However, a triable issue remains as to whether Dalrymple abused the common-interest privilege by acting with actual malice. Since Gordon may establish actual malice through recklessness–and recklessness may be established through negligence, motive, and intent, *Allen*, 664 P.2d at 344–a reasonable jury could infer that Dalrymple's diagnoses (to take one example) were reckless. Therefore, summary judgment based on the common-interest privilege is not appropriate.

### 3. Intracorporate privilege

The intracorporate privilege is also a qualified privilege. *Simpson v. Mars Inc.*, 929 P.2d 966, 968 (Nev. 1997). An intracorporate communication is only privileged if the communication occurs in the regular course of the corporation's business. *Id*. Here, Dalrymple has shown his letter was sent in the regular course of the Laughlin clinic's business because the letter went

---

[3]While Dalrymple alleges religious discrimination, not sexual discrimination, his complaint went through procedures pursuant to the state's policy on sexual harassment and discrimination.

through the proper channels for filing a complaint against a superior. Gordon has not contested the application of the intracorporate privilege. Thus, the privilege provisionally applies. However, since the intracorporate privilege, like the other qualified privileges, may be overcome by evidence of actual malice, a triable issue still exists on Gordon's defamation claim.

### C. First Amendment Retaliation Pursuant to 42 U.S.C. § 1983

Gordon alleges a First Amendment retaliation claim in violation of his free exercise of religion. When a government employee alleges that he has been punished in retaliation for exercising his First Amendment rights, the employee must prove "(1) that the conduct at issue is constitutionally protected, and (2) that it was a substantial or motivating factor in the punishment. Even if the employee discharges that burden, (3) the government can escape liability by showing that it would have taken the same action even in the absence of the protected conduct." *Settlegoode v. Portland Pub. Sch.*, 371 F.3d 503, 510 (9th Cir. 2004).

Here, even assuming Gordon's religious remarks constituted protected conduct within the ambit of the Free Exercise clause, the remarks were not a cause of Gordon's termination. The undisputed evidence demonstrates Gordon's termination resulted from the four sexual harassment complaints lodged against him. (Bawden Dep. (#13), Attach. 2 at 12-16.) In addition, the investigation following Dalrymple's letter uncovered no evidence that Gordon discriminated against Christians. (Dep't of Personnel Memo. (#13), Attach. 3 at 2-5.) Therefore, partial summary judgment on Gordon's First Amendment retaliation claim is appropriate.

### IV.  Conclusion

Dalrymple's letter contained defamatory statements. Though the letter facially falls under the common-interest and intracorporate qualified privileges, an issue of fact remains as to Dalrymple's actual malice. Therefore, summary judgment on the defamation claim is inappropriate. However, Gordon's First Amendment retaliation claim fails to establish a prima facie case, and partial summary judgment is thus warranted.

IT IS THEREFORE ORDERED that Dalrymple's Motion for Summary Judgment (#13) is GRANTED in part and DENIED in part.

IT IS SO ORDERED.

DATED this 8th day of July 2008.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE